No. 17,372.

EARNEST E. EADON, ET AL. *v.* O. W. HUSHER, CONSERVATOR, ETC.

(283 P. [2d] 643)

Decided May 9, 1955.   Rehearing denied May 31, 1955.

Mr. W. H. MOULTON, for plaintiffs in error.

Mr. GEORGE M. GIBSON, for defendant in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

THE parties herein will be referred to as they ap-

peared in the trial court, where defendant in error was plaintiff and plaintiffs in error were defendants.

Plaintiff is conservator of the estate of William Hamilton, who was adjudged a mental incompetent by the county court of Elbert County on November 7, 1952. Plaintiff's complaint filed on December 18, 1952, prayed for cancellation of a certain deed made by William Hamilton on October 3, 1952, whereby he conveyed to defendants a certain tract of land in Elbert County, Colorado, in exchange for a small house in Limon, Colorado, and payment of $300 in cash.

Plaintiff's complaint was grounded upon the mental incapacity of the said Hamilton, together with an allegation that the property by him conveyed to defendants was worth $6,000, and that the house received in exchange for the Hamilton property was worth only $1,000, and that defendants well knew of the mental incapacity of said Hamilton at the time of said transaction and "took advantage of his mental condition." Plaintiff tendered a reconveyance of the house to defendants.

By answer, defendants admitted the execution and delivery of the deeds, but denied the other allegations of the complaint. Trial was to the court and resulted in a decree in favor of plaintiff. The trial court found that the consideration for Hamilton's deed was "grossly inadequate" and that Hamilton was mentally incompetent to execute a valid deed to his property, and entered judgment accordingly. A motion for new trial was dispensed with and defendants bring the cause here by writ of error.

In summary, defendants' counsel urge that the findings of the trial court are not supported by the evidence, and that the trial court erred in not awarding defendants a return of $300 included in the consideration for the Hamilton deed.

The record discloses that a lunacy complaint was filed in the Elbert County Court against William Hamilton on September 20, 1952. The hearing was not completed and

letters of conservatorship were not issued until November 7, 1952. It also discloses that defendants Eadon on October 2, 1952, conferred with Judge Kennett of the Elbert County Court and discussed the matter of buying the Hamilton ranch. The Judge informed them of the pending proceeding against Hamilton and there is evidence in the record that he informed them that the only way the Hamilton land could be sold was by public sale to the highest bidder. On the next day, October 3, 1952, the Eadons conveyed to Hamilton the house in Limon and secured from Hamilton a deed to the ranch. Eadon and his wife gave Hamilton $300 in cash. The transaction in question was entered into in a lawyer's office in Limon; the only parties present being the attorney, the defendants and Hamilton. In his testimony the lawyer said he noted an impediment in Hamilton's speech and that Hamilton was hard of hearing. He also said that Mr. Eadon told him he had talked to Judge Kennett of the county court, but that Mr. Eadon did not inform the attorney concerning the matters discussed with the county judge.

There is competent evidence in the record that for many years Hamilton lacked initiative; had to be told how to do things; did no chores without instruction; that while his parents lived he was controlled by them and after the decease of the parents Hamilton would talk over his problems with acquaintances and follow the last advice given him. A total of fifteen witnesses testified for plaintiff including neighbors, business people, Hamilton's physician, the sheriff and the county Judge of Elbert County. His physician testified that Hamilton was not mentally competent to transact business at the time the trade was consummated. He further testified that Hamilton had cerebral arteriosclerosis, a progressive disease resulting in senility. There is also evidence that Hamilton had symptoms of paranoia; that he had a speech impediment; could not read or write, except for writing his own name and read-

ing numerals and simple words. He had other persons write his letters for him. Neighbors testified that in their opinion Hamilton did not understand a lease or contract. Hamilton's general health was impaired and his hearing was poor; he was unable to farm or look after his property.

The testimony in the record, all received without objection, with reference to the value of the respective properties which were exchanged on October 3, 1952, varied from $3,475 to $6,675 for the Hamilton ranch; the value of the house in Limon varied from $1,500 to $3,000. The trial court found that the consideration given by defendants "was grossly inadequate."

It is admitted that when the Eadons took possession of the Hamilton property there were two horses on the place which defendants sold for $94.50; also hay in the hayloft and on the ground and some corn fodder. This hay was sold by the Eadons. What was realized from the sale does not appear. Mrs. Eadon testified that the $300 was not paid for the personal property. We feel the trial court was correct, under the record here made, in not requiring that the $300 cash be returned to defendants.

■ Counsel for defendants urge that a greater burden of proof rested upon plaintiff than is applicable in other civil cases. They claim plaintiff had to prove his case beyond a reasonable doubt. Such is not the rule in Colorado. *House v. Smith*, 117 Colo. 305, 187 P. (2d) 587.

■ From a careful and painstaking review of this entire record of the proceedings before the trial judge, we deem it clear that the evidence justified the conclusion of the trial court that Hamilton was a mental incompetent; that defendants knew of his mental condition and incapacity; that defendants by their dealings with him precluded themselves from having the $300 restored to them, especially in view of the undisputed facts surrounding the sale of the horses and the appropriation of the hay and corn fodder. The record

supports the findings and conclusions of the trial judge, and the judgment is affirmed.